Go ahead, Counsel. Thank you. Good morning, Your Honors. Caroline Libet, Federal Defenders, appearing on behalf of Mr. Escobar, the appellant. What happened at Mr. Escobar's jury trial was not fair. The district court prevented him from holding the government to its burden of proving alienage, and the district court's basis for doing so was wrong. Mr. Escobar should get a new trial. What happened is three pieces of evidence in Mr. Escobar's A file show that his mother is a United States citizen. But those were his own statements that were reported to interviewing agents, and therefore hearsay. Two of those statements were his own statements. One statement was actually an admission of party opponent, and I'll explain to the courts why. I think in order to explain that, it helps the Court to look to the excerpt of record, and I'd ask the Court to look at page 42 of the excerpt of record. It's important to look at this document because I do think the government's brief takes the statement out of context in some ways. If the Court can see, at the bottom is the statement that we were seeking to introduce, that the subject's mother was a national of Guatemala and a citizen of the United States. What this is is this is a record of investigation that was created by a government employee. That is Agent Anthony. It was created within the course of his employment. And we know that this is a statement of Agent Anthony, not Mr. Escobar. We know that because above, the other statements say that Mr. Escobar claimed or admitted such, but then there's a legal conclusion that Mr. Escobar is removable pursuant to Section 212A9A2 of the Immigration and Nationality Act. Wasn't this statement contained within Escobar's 2012 statement to the Department of Homeland Security? No, Your Honor. This is a separate document. This is a record of investigation that was created by a government employee in the course of his employment. This statement here appears to be something that was gleaned from a government database. So it was admissible under that exception. And the problem in this case was, is that this particular district judge has a blanket rule against what it considers to be self-serving hearsay. Under this judge's blanket rule, a non-testifying defendant can never introduce out-of-court statements that exculpate him, even if those statements fall within an exception to the hearsay rule. Here, well, first of all, there's no such rule. And here the evidence did fall within hearsay exceptions. First, I've already addressed why one of the statements fell within the admissions of party opponent exception. And the other two statements, those statements fell within the family history exception to the hearsay rule. Those were indeed Mr. Escobar's statements, but they fall within that exception for a couple reasons. First, they fall within that exception because they are regarding family. I mean, I think it's clear that they were regarding his mother's citizenship. They also fall within the exception because they involve similar facts of personal or family history. As the Court is aware, that exception lists some things that apply, but that list is non-exclusive, marriage, birth, those sorts of things. They all relate to citizenship. Kagan. Do you have a case? What's your best case for that? I'll be honest, Your Honors. The case law is very sparse regarding the family history exception. I would point the Court to Porter v. Quarantillo. That's a Second Circuit case. And there the Court said that a change in a family member's country of residence or citizenship would fall within the hearsay exception. And these statements were also reliable. They were sworn statements that were given to agents, and they involved biographical information. The government makes a big point that we didn't lay the foundation for those statements, but there's a couple things I'd like the Court to know. In Porter v. Quarantillo, that defendant was not allowed to take advantage of that exception. Right. Is factually this case different in some way? It's a little bit confusing. In that case, the defendant tried to introduce a statement about the age at which the mother relocated, and the Court said that you couldn't – that wasn't a significantly distinct fact, like the age at the time of relocation, but the Court said that an actual change in residency or a change in citizenship, that that would be sufficiently unusual or interesting to fall within the exception. You could have called the mother to testify about it directly. Your Honor, unfortunately, nothing was disclosed to us about the mother. Nothing was disclosed to us in discovery about her A files, so we didn't have any information about her mother – his mother. You had your client. We did. We did. But Mr. Escobar chose not to testify. I think that there were lots and lots of good reasons for that. Well, I'm not saying he should have testified, but he certainly could have said, hey, Mom, could you come and testify for me? But I think it's important for the Court to understand that we weren't trying to present any kind of affirmative defense or our own evidence. What we were trying to do is challenge the government's ability to prove alienage, something that they had the burden of doing beyond a reasonable doubt, and we were precluded from doing that. But I think the point is that you were trying to say the government didn't sustain its burden proved by showing that the mother had citizenship and she is the person who could have given you that. Correct. But that was in the A file that his mother was a United States citizen, and the basis for the district court's exclusion of that evidence was simply wrong. The district court also excluded this evidence under 403. I think that that was plainly incorrect. From Evans, we know in this Court's words that weighing probative value against unfair prejudice under 403 means probative value with respect to a material fact if the evidence is believed. I don't think it's a 403 issue. Clearly, it's probative. It's just a question of whether you can find a hearsay exception that really fits. Do you want to spend some of your time talking about the modified categorical analysis of the remaining issues in the case? Yes, Your Honors. I would defer to the Court on whether the statute's divisible, but even if the Court does affirm Mr. Escobar's conviction, I think the Court must vacate and remand for resentencing. And I think there's a couple reasons for that. First of all, there were no Shepherd documents provided by the government at Mr. Escobar's sentencing, nothing relied on by the district court. And after the district court decided that this prior conviction was divisible, he just ruled that it was a plus-16 without looking at any documents. He relied solely on the pre-sentence report and under that. Why was there no objection by defense counsel? If you look at the probation officer's report, paragraph 2, right before the sentencing indicates we have this filing and the court documents and case numbers identified and the courts identified, is there a waiver problem? No, Your Honor. There was an objection. I filed a written objection to the pre-sentence report characterizing this as a plus-16. I also objected at the time of sentencing. And even if the issue is not preserved under this Court's precedent, we do win under plain error. I would like to just briefly go back to my trial issue because I do think it's important. This district judge really does have this overarching rule against what it considers self-serving hearsay. There's no such rule. And I do believe that these statements did fall within hearsay exceptions, and we should have been given a chance to argue those hearsay exceptions, but we weren't. The district court, and I'll give the Court some sites, he believes that a non-testifying defendant does not have the right to elicit hearsay statements that exculpate  That's on page 137 of the record. And the district on page 138, the Court finds that it's hearsay. It's inadmissible hearsay. The Court finds that the other exceptions do not trump that. So what the district court did is he didn't, under his rule, hearsay exceptions can never apply. And I think it's I don't read it that way. I read him as saying it's hearsay, at least he felt it was hearsay, and then saying you don't fall within the exceptions. Your Honor, I think the record speaks for itself. That's not what happened, unfortunately. What the Court found is that a non he has this rule that a non-testifying defendant can never introduce out-of-court statements. Well, irrespective of that, you still have to fit into one of the exceptions for it to be admissible. And we do. And that's not the basis for the Court's ruling below. The exception being the family history? The family history and then the admission of party opponents. And the district court ruled that those he didn't rule that those exceptions didn't apply. He ruled that they could never apply because its rule against self-serving hearsay never trumps those exceptions. Am I correct that the agent who testified, the Border Patrol agent, was the custodian of the documents? He was not the interviewing agent who actually took the statement from the defendant or whoever may have made the statement about his mother's citizenship. Is that correct? That's correct. But this case agent laid the foundation for the admission of all the documents in Mr. Escobar's AFAL that the government used to prove its case against Mr. Escobar. You're not saying that automatically means they all get in, are you? Oh, no. No. They would come in as public records, and then the statements would have to fall within a hearsay exception. If I could remain there, reserve the remaining time for rebuttal. Sure. Sure. Of course. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. Michael Hayman on behalf of the United States of America. Can I have your counsel address the sentencing issue first? Given Castillo-Marin, do we need to send this case back? Pardon me. What was Your Honor's last comment? Given the fact that we've held that the district court can't rely on a probation report, a PSR's factual summary of the criminal history, do we need to send it back for resentencing? As counsel pointed out, there were no Shepard-approved or listed documents that the district court examined in this case. Yes, Your Honor. The United States cited in its brief, and I'll find the citation for Your Honor, a Ninth Circuit opinion that said when the district court relies on judicially or the PSR relies on judicially noticeable documents, that in and of itself is sufficient, which is exactly what occurred here. But there's also a Ninth Circuit precedent that says you have to identify what those exact documents. Here, all we have is the paragraph summary. Nothing that I saw in the record indicates that the exact documents were identified. I have two responses to that, Your Honor. The first one is if this issue had been brought up at the lower court, the documents were readily available and they could have very easily been shown to the defense counsel and the issue could have been resolved. That's why the United States has made the waiver issue. But second, Your Honor. Well, was there a written objection? There was a written objection generally to the enhancement, but not specifically as to the sufficiency of the underlying documentation. But how do you get around the case that I think my colleague just mentioned, and that's Castillo-Marin, which says notwithstanding the defendant's failure to object to the PSR, district court may not rely on a PSR's factual description of a prior offense to determine whether the defendant was convicted of a crime that would apply to an enhancement? The reason the United States can get around those particular line of cases, including that, is that if you look at the context of those cases, those cases come up when we have simply a charging document, and a charging document saying somebody is being accused of, for instance, possession for sale of methamphetamine, and there's nothing else to substantiate that that, in fact, was what the individual was convicted of. And if that were the case here, where we were simply relying on a charging document, the concern of those particular line of cases, that would be true. Show me in the record what document the PSR author is relying on. Oh, there is nothing in the record other than the statement. I know. Which is, but that's a common practice, Your Honors, is for the district courts to look at a PSR and know that the PSR, the probation officers, who which we readily rely on, have looked at all the judicially noticeable documents, and that's why they put them in. But we don't. Yeah. Which are the judicially noticed documents? There's a lot of debate about what's judicially noticeable. A lot of case law around what documents you can look at and which ones you can't. The government concedes that it doesn't exist in the record. But that's why. But there's not a record that can be reviewed. But that's why, Your Honor, the United States relies on the waiver argument, because this was a nonissue in the trial court and could have so easily been resolved in a matter of seconds, because, you know, most of the time a probation officer comes to the table with those documents in hand, and if the defendant had made any objection on this specific issue, we would have handed it to him and it would have been resolved. So let me see if I understand it right, because trying to get around the case I mentioned earlier, which indicates this is plain error and a failure to object is not enough, are you saying that because it's judicially noticeable, that takes care of the problem? I am, Your Honor, because the district courts regularly rely on the probation to look at those judicially noticeable documents. And if there is an issue as to whether those judicially noticeable documents are actually judicially noticeable or the sufficiency of those documents, defendants all the time actually raise that issue specifically. The latter point is probably the more critical one, because a charging instrument is judicially noticeable, right? It is. An indictment or a complaint or an information. But that's not enough. That's not sufficient. You have to find something, whether it's a guilty plea or a sentencing transcript or something that reflects what actually happened. Don't you think it's fair to have that in hand? Well, those were in hand by the probation officer. We don't know that. We don't know that. All we have is the one paragraph. I think that this Court can rely on a probation's officers when they say judicially noticeable documents. We know that it's not just a charging document. How do we know that? The plural in and of itself, I think, shows that the probation officer who does this all the time. But case law says we have to know what those documents are, because some may be okay and some may not be sufficient. I think the only response thing can be is if this had been raised, it would have been resolved. Yeah. We can say that. Maybe. You cited a case that you said stands for the proposition that this is not plainly erroneous, assuming we go with plain error review. What was that case that you cited? Tell me again. It was in a footnote, and I'm not seeing it immediately, Your Honor. Your Honor, I apologize. I'm not seeing it as I stand here. All right. Okay. Anything else you want to add? What I'll do is I'll pivot then to the underlying sort of constitutional issue, the hearsay issue, which was discussed at length by the defendant. And a couple things I want to point out are that the defendant very clearly abandoned this particular grand constitutional issue at trial. You know, we understand based on the record that the defendant was initially most definitively trying to introduce these statements for the truth of the matter asserted that the mother was a U.S. citizen. In fact, in opening statements, they boldly said the mother is a U.S. citizen. And when Your Honors were talking about why didn't the defendant just call the mother, when the defendant initially comes out and said the mother is a U.S. citizen, clearly there's something there that they're able to make that representation in opening statements that the defendant was either speaking with his mother or something there that the defendant could have relied on. But more importantly, on several occasions, the defendant to the district court very plainly said that we don't care. This is not an issue to whether the mother is a U.S. citizen. And you'll see those representations in the excerpts of the record at 125. Excuse me, 126, 124, 131, 132, 37. And the reason that's important, I want to pinpoint the timing here. It's not just that the defendant in the heat of the moment at a sidebar said, we don't care whether the mother is a U.S. citizen. I mean, that in and of itself I think is sufficient to say that the defendant abandoned this notion of saying that there's a constitutional violation here because they were trying to admit evidence for a specific reason. But look at the timing here. We had a sidebar, and then we went home for the day. And at that evening, the defendant at that point had known that the mother's U.S. – I mean, the mother's A file was available. There was never any request to see the A file. Instead, there was briefing on whether it was admissible for a different purpose. Then the next day, we come back to trial, and the defendant again affirmatively and unambiguously says, we don't care whether the mother is a U.S. citizen. So twice in a span of two days, the defendant has taken this position that they don't care, they're not attempting to admit it for that purpose. What is your argument here, that they waived any right to now argue that the evidence should have been admitted? Yes, Your Honor. And it goes to really the constitutional issue, which one of the factors is, you know, was this central to the issue at trial? And when the defendant twice in a span of two days says it's not central, it can't be the constitutional violation. Okay. What about the admissibility as a family history exception here? First of all, when we look at what a family history exception is, in all the cases and in all the literature … And can you focus on the third statement, which is what your opponent emphasized today? Sure. That third statement. The first thing we have to assume is that there is actually a testifying witness to talk about the family history exception here, and all the literature assumes that there is a live witness. Here, of course, we don't have a live witness. So on its face, the exception can't apply because we're taking a double hearsay and trying to put it in court without an actual witness to testify. But then, of course, we get to the issue of, is there some foundational requirement as to whether this particular evidence is a family consensus or not? Here, you know, we're talking about this in a vacuum. We have nothing to test the validity or the foundation of whether this actually is a family consensus. It's just somebody saying something in a third-party setting. But in getting to Your Honor's question about the specific statement at issue here, the specific statement at issue that the defendant is saying was a statement by a government official coming in at ER 42, quote, the subject's mother was a national of Guatemala and a citizen of the United States, end quote. First of all, this isn't an investigation document. This is an I-213, which is defendant had just been arrested on another illegal entry, and it's not a sworn statement. It's simply a defendant talking to you. But what is it? Is it something that is taken from other documents? How is this prepared? No, it's not taken from other documents. It's at the time of the arrest. When they're processing a defendant, they're getting certain biographical information and talking to them, and the defendant is providing this information. There is no independent sources that the individual agent is relying on to compile this. So like the other two statements, this was a statement made to a government official and agent, essentially. It absolutely was. And remember, when we're talking about the hearsay of exceptions, this is an abuse of discretion standard as to whether it applies. The district court very clearly said this is a statement of Escobar. The district court made that specific finding as to this particular document, and it would be an abuse of discretion. Well, it says it's a statement of Escobar because he was interviewed and this was his response. But you're out of time. Do you have any additional questions, Judge Schroeder? No.  Thank you very much for your argument. Your Honor, I think as far as the record of investigation goes, there has to have been something else that the agent was relying on. If the Court looks at page 42 and 43 of the excerpts of record again, the statement that the subject is removable pursuant to Section 212A9A2, that's clearly something that came from someone else or somewhere else. And then on the next page, details about immigration and history and criminal history, that's something that did not come from Mr. Escobar, just like this other statement about his mother's citizenship. And the district court didn't – I think the record speaks for itself, but the district court never ruled that this was a statement of Mr. Escobar. The district court never got into who made these statements, never got into whether any hearsay exceptions applied, because it has this overarching rule that a defendant can never bring in out-of-court statements if he doesn't testify. And as far as the government's failure to investigate, that was just an alternative defense theory once the district court definitively ruled that these types of statements can never come in under any hearsay exceptions under any circumstances. It is permissible to proceed on alternative defense theories, and that's all we were asked to do. Kagan. Thank you, counsel. Thank you. The matter is submitted. I thank both parties for their arguments.
judges: Zouhary, Schroeder, Nguyen